UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

DOROTHY J. HOUSEMAN,

                                        Plaintiff,

                -vs-                                        13-CV-210-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────────

APPEARANCES:   LAW OFFICES OF KENNETH HILLER, PPLC (JAYA SHURTLIFF,
               ESQ., of Counsel) Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (MARY CLARE
               KANE, Assistant United States Attorney, of Counsel), Buffalo, New
               York, for Defendant.


## <u>INTRODUCTION</u>

        This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated April 23, 2015 (Item 20).

Plaintiff Dorothy Houseman initiated this action on February 26, 2013 pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure (see Items 9, 16).  For the following reasons, plaintiff's

motion is DENIED, and the Commissioner's motion is GRANTED.

**BACKGROUND**

Plaintiff was born on August 22, 1978 (Tr.128).[1]  She protectively filed applications for SSI benefits on November 9, 2008 and April 20, 2010, alleging disability due to depression, anxiety, and a learning disability, with an onset date of January 1, 2008 (Tr. 128,132).[2]  The applications were denied administratively (Tr. 43-44).  Plaintiff then requested a hearing, which was held on November 9, 2011, before Administrative Law Judge ("ALJ") Timothy McGuan (Tr. 23-42).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Additionally, the ALJ heard testimony from a Vocational Expert ("VE"), James Phillips.

On November 22, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 12-18).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (depressive disorder, post traumatic stress disorder, and learning disorder), while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 14-15). The ALJ discussed the evidence in the record, including school records, treatment records, reports from consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional

---

[1]  Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the Answer to the Complaint (Item 8) in this action.

[2]  Plaintiff's initial application was re-opened upon the filing of the second application, because the initial application had been denied within 12 months of the subsequent application (Tr. 12)

limitations: plaintiff can occasionally interact with the public and frequently interact with co-workers and supervisors and can understand, remember, and carry out simple tasks, but not complex or detailed tasks (Tr. 15).   Using Medical-Vocational Rule 204.00 as a framework for decision-making and considering the testimony of the VE, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform and that she has thus not been disabled within the meaning of the Act at any time since her initial application was filed (Tr. 17-18).

The ALJ's decision became the final decision of the Commissioner on January 3, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ failed to develop the record when he did not order a consultative IQ exam; (2) the ALJ's Residual Functional Capacity assessment was not supported by substantial evidence; (3) the ALJ erred in his assessment of plaintiff's credibility; and (4) the Vocational Expert relied on an incomplete RFC assessment.  *See* Items 9-1, 18.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Item 16-1, 19.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the

Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C.  §  405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including,

in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.   42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.   "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).   Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."

5

*Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 1382c(a)(3)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§ 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's]

6

physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(a)(4)(ii); *see also* § 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv).  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and

citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.   The ALJ's Disability Determination

In this case, ALJ McGuan determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since November 9, 2008, the date of plaintiff's initial application (Tr. 14).  At steps two and three, as indicated above, the ALJ found that plaintiff suffers from severe impairments, but that none of her impairments, singly or in combination, meets or equals the severity of any of the impairments in the Listings (Tr. 14-15).  With particular focus on Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders), the ALJ found only mild restrictions in plaintiff's activities of daily living, moderate difficulties in social functioning, moderate difficulty in concentration, persistence or pace, and no episodes of decompensation (Tr. 15).

At step four, the ALJ discussed the evidence, including treatment records, reports of consultative examinations, and plaintiff's testimony.  He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of these

symptoms were "not credible to the extent they are inconsistent with" the RFC assessment (Tr. 16).

Based on his review of the evidence, the ALJ found that plaintiff has the RFC to perform a full range of work at all exertional levels, with certain non-exertional limitations (Tr. 15).   Using Medical-Vocational Rule 204.00 as a framework and relying on the testimony of a VE, the ALJ found that there were a significant number of jobs in the national economy that plaintiff would be able to perform and thus she was not under a disability from the time of her initial application (Tr. 17-18).

## IV.     Plaintiff's Motion

### A.     ALJ's Duty to Develop the Record

Plaintiff argues that, as there was evidence that raised a colorable claim of intellectual disability, the ALJ was under an obligation to develop the record and order a consultative IQ exam.   A consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. § 416.919a(b). The decision to obtain a consultative examination is made on a case-by-case basis at the discretion of the Commissioner. *See* 20 C.F.R. §§ 416.917, 416.919–19b. "It can be reversible error for an ALJ not to order a consultative examination when an examination is required for an informed decision." *Tankisi v. Commissioner of Soc. Sec.,* 521 F. App'x 29, 32 (2d Cir. 2013). "However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Id.* (citing *Lefever v. Astrue*, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 443 F. App'x 608 (2d Cir. 2011)).

In this case, plaintiff underwent a psychiatric consultative evaluation on April 17, 2009.  Plaintiff reported difficulty with sleep and loss of appetite, irritability, and social withdrawal (Tr. 189).  Dr. Thomas Ryan, Ph.D. found plaintiff's thought processes were coherent, her mood was neutral, her attention and concentration were intact, and her memory skills were intact (190-91).  Plaintiff's cognitive functioning appeared to be in the below average range, but her insight and judgment were adequate (Tr. 191).  Dr. Ryan diagnosed adjustment disorder with depressed mood.  He found "no significant limitations" in plaintiff's ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and generally make adequate decisions (Tr. 191).  Dr. Ryan stated that plaintiff may have moderate limitations in her ability to relate adequately with others and deal with stress. *Id.*

On June 25, 2010, plaintiff underwent an additional psychiatric evaluation with Dr. Renee Baskin, Ph.D.  Again, plaintiff reported trouble sleeping, weight loss, and anxiety (Tr. 207).  Dr. Baskin found plaintiff's speech was clear, her thought processes were coherent and goal-directed, her affect was appropriate, her attention, concentration, and memory were intact, and her insight and judgment were fair (Tr. 208-09). Plaintiff's cognitive functioning was estimated to be in the below average range (Tr. 209).  Dr. Baskin diagnosed dysthymic disorder and stated that plaintiff would have minimal to no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions, relate adequately with others, and appropriately deal with stress (Tr. 209).

10

On June 25, 2010, plaintiff commenced treatment with Catholic Charities, seeking medication for depression and anxiety, and underwent an initial psychiatric evaluation. She described a childhood of emotional and sexual abuse and complained of sleep disturbances, loss of appetite, anxiety, and angry outbursts (Tr. 269).   Plaintiff was alert and oriented, her mood was dysphoric and anxious, her thought processes were rational, insight was limited, and judgment was intact (Tr. 270-71).   Plaintiff was diagnosed with depressive disorder and posttraumatic stress disorder ("PTSD") and was prescribed Abilify and Klonopin (Tr. 271).

Records from Hopevale Union Free School District indicate that plaintiff was classified as Emotionally Disabled and Learning Disabled.   According to her Individual Education Program ("IEP"), plaintiff was placed in a classroom with no more than 6 students, was exempt from a second language requirement, and received an IEP diploma (Tr. 216). Plaintiff was provided reading services for 36 minutes, 5 times per week and certain test modifications.   In 1994, plaintiff's final average was 85. In 1995 her final average was 85.   Plaintiff graduated from Hopevale in 1996 (Tr. 220-221).

Contrary to plaintiff's arguments, the record does not support plaintiff's position that an IQ examination was necessary for an informed decision. Plaintiff did not seek SSI on the basis of a cognitive mental disability.   Although Drs. Ryan and Baskin both estimated plaintiff's cognitive functioning as below average, there is no evidence to suggest that plaintiff is mentally impaired consistent with Listing 12.05.[3]   The consultative examiners

---

[3]   Listing 12.05 (Mental Retardation) requires a showing of (1) mental incapacity evidenced by dependence upon others for personal needs; (2) valid IQ score of 59 or less; (3) borderline IQ score of 60 to 70 plus an additional physical or mental impairment that imposes a significant work-related limitation; or (4) IQ score of 60 to 70 plus two or more of the following: marked limitation in activities of daily living, social functioning, or maintaining concentration, persistence or pace, or repeated episodes of

both concluded that plaintiff retains the capacity to understand and follow simple instructions and directions, and perform simple tasks independently (Tr. 328). At the time of the hearing, plaintiff testified that she was attending classes to earn a General Educational Development ("GED") degree and had successfully managed seasonal work at a retail store (Tr. 30, 34-35). She is capable of attending to her personal and daily living needs independently, and manages her own funds (Tr. 27-28, 36). Plaintiff's cognitive limitations are accommodated in the ALJ's assessment of her residual functional capacity (Tr. 15). In sum, the record does not suggest any mental limitation requiring a consultative intelligence examination in order to make an informed decision.

### B. The RFC Determination

Additionally, plaintiff contends that the Commissioner's determination should be reversed because the ALJ's RFC determination was not supported by substantial evidence. According to plaintiff, the ALJ made misstatements of fact and misinterpreted the opinions of the consultative examiners when he stated that both consultative examiners found that plaintiff suffered "no functional limitations" (Tr. 16).

"Residual functional capacity" is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96–8p, 1996 WL 374184, *2 (S.S.A.1996). In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 2013 WL 4647643, at *8

---

decompensation. 20 C.F.R. Pt 404, Subpt. P, App. 1,§ 12.05.

(W.D.N.Y.  Aug. 29, 2013), *aff'd*, 579 F. App'x 27 (2d Cir. 2014). The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

In this case, ALJ McGuan found that plaintiff retained the RFC for a full range of work at all exertional levels, but limited her to simple tasks in an environment with little public contact (Tr. 15).  He relied on the psychiatric consultative examinations of Drs. Ryan and Baskin, as there was no other treating or examining source opinion regarding plaintiff's ability to perform work-related functions.   While the ALJ described the consultative examiners as having found "no functional limitations," both consultative examiners actually found minor limitations.  Dr. Ryan found "no significant limitations" in plaintiff's ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and generally make adequate decisions, but found that plaintiff "may have" moderate limitations in her ability to relate adequately with others and deal with stress (Tr. 191). Dr. Baskin stated that plaintiff would have minimal to no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions, relate adequately with others, and appropriately deal with stress (Tr. 209).

The court finds this minor inaccuracy in the ALJ's description of the consultative opinions is insignificant and ultimately harmless.  The ALJ determined plaintiff's RFC

consistent with the substance of the opinions of Drs. Ryan and Baskin. "[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.' " *Smith v. Colvin*, 17 F.Supp.3d 260, 268 (W.D.N.Y. 2014) (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005)). "This is particularly so where the consultant directly examines the applicant." *Id.* Here, the opinions of the consultative examiners are consistent with the relatively benign findings in the medical record. Additionally, the court notes that there is no treating source opinion that characterizes plaintiff as disabled and unable to function in the workplace. The RFC takes into account plaintiff's need for simple work in a low stress setting. Accordingly, the court finds that any error in the characterization of the medical opinions is harmless, as the RFC determination is based on substantial evidence in the record.

Plaintiff further argues that the ALJ erred in failing to weigh the opinions of the State Agency review analysts. In a Psychiatric Review Technique ("PRT") dated April 30, 2009, State Agency psychology consultant Butensky found mild restrictions in plaintiff's activities of daily living and ability to maintain social functioning, no restrictions in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 203). In a Mental Residual Functional Capacity Assessment ("MRFCA"), Dr. Butensky found that plaintiff's psychiatric impairment is non-severe (Tr. 205). In a PRT dated August 25, 2010, State Agency psychology review consultant Totin found mild restrictions in plaintiff's activities of daily living and ability to maintain social functioning, moderate restrictions in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 246). Dr. Totin concluded that plaintiff could perform simple work in a low-stress setting (Tr. 248). In the "Summary Conclusions" of the MRFCA, Dr. Totin found no significant

14

limitations in most of the areas of mental activity. He found moderate limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from symptoms, the ability to respond to changes in the work setting, and the ability to set realistic goals or make plans independently of others (Tr. 232-33).[4]

The ALJ did not cite to these opinions in the decision or give them any specific weight. These review consultants did not examine plaintiff personally, but merely reviewed the reports of the consultative examiners and incorporated the results of those examinations into their conclusions, which are consistent with both the consultative examiners' opinions and the RFC. The court finds that the ALJ did not err in failing to specifically weigh or discuss the opinions of the review consultants.

Plaintiff also argues that the ALJ failed to provide a complete function-by-function analysis of plaintiff's mental RFC and failed to make specific findings as to plaintiff's ability to make work-related decisions and deal with changes in the work setting. An ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand so long as the RFC is otherwise supported by substantial evidence. *See Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013) ("[w]e decline to adopt a per se rule[;] ... [w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper

---

[4] The "Summary Conclusions" reported by the state agency review consultants in the mental RFC assessment form are chiefly intended to serve as a "worksheet" for the reviewer's use, and "[i]t is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment') of [the form] that adjudicators are to use as the assessment of RFC." Social Security Administration, Program Operations Manual System § DI 25020 .010, https:// secure.ssa.gov/apps10/poms.nsf/lnx/0425020010.

legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed"); *Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (summary order) ("while the ALJ did not expressly discuss [claimant's] ability to perform each of the functions ... [,] substantial evidence supports the ALJ's overall RFC determination"); *Murphy v. Astrue*, 2013 WL 1452054, *6 (W.D.N.Y. Apr. 9, 2013) (substantial evidence supported RFC assessment and remand was not required, "although the ALJ did not methodically walk through each 'function' "); *Lloyd v. Astrue,* 2013 WL 690499, *4 (W.D.N.Y. Feb. 25, 2013) ("[t]here is no dispute that the ALJ did not conduct an explicit function-by-function assessment in his decision[,] [b]ut that is not, *ipso facto*, cause for remand").   Although remand is not automatic, it would be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d at 177.

Here, the ALJ found that plaintiff could perform simple unskilled work with limited interaction with the public and co-workers.  Implicit in this finding is plaintiff's ability to make simple decisions and adapt to a low stress work environment.  The record contains no contradictory evidence to suggest that plaintiff is incapable of performing these functions and the record is not so inadequate as to frustrate meaningful review.  The ALJ discussed the medical evidence and plaintiff's hearing testimony and incorporated plaintiff's limitations into the RFC, which is supported by substantial evidence in the record.  Accordingly, while the ALJ did not provide a function-by-function analysis, any error in this

respect is harmless.   Based on the court's review, and upon consideration of the record as a whole, the court finds that the ALJ's RFC assessment was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law in a manner sufficient to allow plaintiff and the court to follow his reasoning, and is supported by substantial evidence. Accordingly, plaintiff is not entitled to reversal or remand on the ground that the RFC assessment is not based on substantial evidence.[5]

## C.  Credibility

Plaintiff argues that the ALJ erred in his assessment of her credibility.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F.Supp.2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F.Supp.2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929. The Regulations

---

[5]  As the court has found that the RFC determination is supported by substantial evidence, it need not address plaintiff's argument that the Vocational Expert relied on an incomplete or inaccurate RFC assessment.

outline the following factors to be considered by the ALJ in conducting the credibility

inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity

of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the

type, dosage, effectiveness, and side effects of any medication the claimant takes or has

taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the

claimant receives or has received for relief of her pain or other symptoms; (6) any

measures the claimant uses or has used to relieve her pain or other symptoms; and (7)

other factors concerning the claimant's functional limitations and restrictions due to pain

or other symptoms.  *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii);  *Meadors v. Astrue*, 370 F.

App'x 179, 184 n. 1 (2d Cir. 2010).   The Commissioner's policy interpretation ruling on this

process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based
> on an intangible or intuitive notion about an individual's credibility. The
> reasons for the credibility finding must be grounded in the evidence and
> articulated in the determination or decision. It is not sufficient to make a
> conclusory statement that "the individual's allegations have been considered"
> or that "the allegations are (or are not) credible." It is also not enough for the
> adjudicator simply to recite the factors that are described in the regulations
> for evaluating symptoms. The determination or decision must contain specific
> reasons for the finding on credibility, supported by the evidence in the case
> record, and must be sufficiently specific to make clear to the individual and
> to any subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a

whole reveals that the ALJ's credibility assessment was performed in accordance with this

guidance.  Plaintiff argues that the ALJ erred in finding that she did seasonal work and that

her difficulty in getting out of bed was a "personal choice" (Tr. 16).  A review of plaintiff's

hearing testimony reveals that plaintiff did seasonal work as a cashier at Big Lots and was able to function, although she described some difficulty (Tr. 34-35).   Plaintiff is not motivated to undertake household chores such as cleaning and laundry, but she eventually completes them (Tr. 36).  She testified that she goes to the grocery store when necessary (Tr. 32). She has trouble getting out of bed every morning, but gets up to attend GED class Monday through Friday by setting an alarm  (Tr. 29-30).  Additionally, the medical records indicate mild symptoms, no hospitalizations, and limited treatment. Plaintiff stated that her anxiety is triggered by financial pressures ("I'm ... on the verge of losing my place to live. I have no money. . . . Nothing seems to go right.") (Tr. 32-33).  The ALJ concluded that plaintiff's activities of daily living are inconsistent with complete disability.

In the court's view, this finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of her symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 12) is denied, the defendant's motion for judgment on the pleadings (Item 13) is granted, and the case is dismissed.  The Clerk of the Court is directed to close this case.

So ordered.

_____\s\ John  T.  Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: October 21, 2015